UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Perry W. Antelman
412/1 Nof Haradynon Street
Neve Daniel
Gush Etzion
Israel

v.

Barbara K. Antelman
115 Brook Road
Sharon, MA. 02067

CASE NO.
05 - 11786 WGY

MAGISTRATE JUDGE _____

RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. _____

**VERIFIED PETITION FOR RETURN OF CHILDREN TO PETITIONER**

**The Convention on the Civil Aspects of International Child Abduction,
The Hague -- October 25, 1980;
International Child Abduction Remedies Act, 42 U.S.C. 11601 et seq.**

I. **Preamble**

1. This petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (Convention), and 42 U.S.C. 11603(b), the International Child Abduction Remedies Act (ICARA).[1] The Convention went into effect on July 1, 1980. It was ratified between the United States and Israel on December 1, 1991.

2. The objects of the Convention are:

   Article 1(a): To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

---

[1] ICARA was enacted to address the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances. Distler v. Distler, 26 F.Supp. 2d, 723, 727 (D.N.J. 1998.)

Article 1(b): To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.[2]

## II. Jurisdiction

3.  This Court has Jurisdiction pursuant to U.S.C. § 11603 (1995), and because this case involves the removal and retention of children under the age of sixteen from their habitual residence of Israel to the United States of America.

## III. Status of Petitioner and Children

4.  The Convention applies to cases where a child or children under the age of 16 years has been removed from his or her habitual residence in breach of rights of custody of petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the children.

5.  The children are Natiya Antelman, born August 11, 1992, age 13, Nediv Antelman, born March 5, 1994, age 11, Nehira Antelman, born December 19, 1995, age 9, Naveh Antelman, born November 23, 1997, age 7, Nuchal Antelman, born June 23, 2000, age 5, and Asael Antelman, born September 14, 2002, age 2. The parties are expecting a child in late September 2005.

6.  None of the children have reached the age of 16 years. The eldest will reach the age of 16 on August 11, 2008, three years after the date of this petition.

7.  At the time immediately before their wrongful removal, the children habitually resided in Israel. The parents had formally immigrated to Israel in 1995 and built a home there, than returned to live in the United States. The family moved to

---

[2] The Convention authorizes a federal district court to determine the merits of the abduction claim, but does not allow it to determine the merits of any underlying custody claim. Friedrich v. Friedrich, 983 F 2d 1396,1399 (6th Cir. 1993); Morris v. Morris, 55 F. Supp. 2d 1156, 1160 (D.Colo 1999). The court's role is to determine in what jurisdiction the children should be located so that the appropriate jurisdiction can make those custody decisions. Loos v. Manuel, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994). The Hague Convention is designed to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic forum. Lops v. Lops, 140 F. 3d 927, 936 (11th Cir. 1998) (citations omitted.)

Israel with the intent to remain permanently on or about September 7, 2004, and resided there since. The children had attended school and were settled in Israel's life and culture.

8. The Petitioner, Perry Antelman, has a right of custody of the children within the meaning of Articles Three and Five of the Convention. He is the father of all the children. He and the Respondent, Barbara Kausits Antelman, are husband and wife. They were married on August 13, 1991 in Jerusalem, Israel.

9. Section 14 of the Israeli Capacity and Guardianship Law, 5722-1963, provides that "The parents shall be the natural guardians of their minor children. Under Section 15 of the Israeli Capacity and Guardianship Law, guardianship "...shall also include the right to custody of the minor, to determine his place of residence...." Section 16 of the law instructs that "The parents shall act in agreement."

10. At the time of the respondent's wrongful removal of the children from their habitual residence in Israel on July 25, 2005, the petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Convention. He is the father and has exercised custody rights over his children since their births. He did not consent to the children's removal from Israel. In fact, petitioner had previously been awarded an Israeli court order prohibiting respondent from leaving the country with the children, based upon her threats to kidnap the children. The respondent succeeded in vacating that order without notice to petitioner when he was away on business.

11. Petitioner has requested the return of the children to Israel pursuant to his Request for Return. The Request for Return has been filed with the United States Department of State and the National Center for Missing and Exploited Children, the Central Authority of the United States of America under the Convention.

3

### IV. Wrongful Removal and Wrongful Retention of the Children by Respondent

12. On or about July 25, 2005, Respondent wrongfully removed the children from Israel within the meaning of Article Three of the Convention and continues to wrongfully retain the children in the United States.

13. The children are presently located in the Commonwealth of Massachusetts, in Norfolk County.

14. As set out in Paragraph 9 of this Petition, petitioner has rights of custody under Israeli law. The removal of the children is therefore in violation of the Israeli code and is a wrongful removal and wrongful retention within the meaning of Articles 3 and 5 of the Convention.

15. Since removing the children, respondent has wrongfully retained them in the United States of America. During this time, petitioner has had only minimal telephone contact with the children, as controlled by the respondent.

16. The parties moved to Israel on September 7, 2004, following reconciliation of their marriage after a period of chaos. As background, the respondent had attacked the petitioner, causing personal injury, in August 2004. Criminal charges were filed against her as a result of this attack. Petitioner also obtained a domestic violence restraining order against her. In his affidavit, he stated that the respondent had a pattern of leaving with the children and becoming difficult to locate. The respondent then filed for a domestic violence restraining order against the petitioner, alleging, inter alia, sexual assault. Upon returning home, respondent told petitioner that the court staff told her she should file criminal charges against petitioner, but that she knew she had "gone too far" in making this false allegation and would never do such a thing. The state Department of Social Services called the house and asked for a return call. The parties then seriously discussed their

problems, decided to reconcile, and to fulfill their longstanding plan to move to Israel as soon as possible.

17. The parties then spent a few days with friends in New York, discussed their plan to permanently emigrate to Israel, and left the United States with their children. They purchased round trip tickets due to fears that they would be stopped from leaving with one-way tickets due to the criminal charges pending against the respondent and the possible Department of Social Services investigation.

18. The respondent has now claimed that she only went to Israel for a vacation, and that she did not understand that papers she was signing were immigration documents. However, Respondent told the immigration officer, who spoke with her in English, that she was permanently moving to Israel. Respondent's friend also translated documents for her, and respondent even applied for immigration and unemployment benefits. The parties also rented apartments for lengthy periods, purchased cars and furniture, and set up bank accounts. A friend of respondent had a conversation with her in May or April 2005 in which she said she was happy in Israel and should have moved there long ago.

19. Respondent further claims that she was being held in Israel against her will and being abused by petitioner and his family. Witnesses in Israel will show the falsehood of these allegations.

20. Respondent further claims that petitioner hid the children's passports from her. This is false, as shown by the fact she had the passports when she abducted the children to the states.

21. In or around October 2004, petitioner discussed traveling to the United States on business. The respondent threatened that if he did so, she would abscond with the children. The respondent also vacillated between wanting to have a good marriage

5

and wanting to "punish" the petitioner for imagined indiscretions, by having him lose the children. She stated this repeatedly to her in-laws. Her punishment of petitioner extended to spreading lies about his mistreatment of her and alleging he had abducted the children when, in fact, he had taken them to the mall on her insistence. Therapists have suggested to respondent that she take medication for her mental condition, but she has always refused and ceased therapy.

22. On October 27, 2004, petitioner sought the assistance of the Rabbinical Court of Israel, and was granted an order prohibiting the respondent and children from leaving the country. Petitioner did not make a business trip to the United States and the conflict between the parties ceased. The Rabbinical Court had scheduled further hearing in the matter for November 28, 2005, at which time respondent could have challenged the order, but she decided not to attend. Petitioner also chose not to attend the hearing.

23. The family moved into an apartment, signing a year-long lease, and the children were enrolled in school. The respondent became pregnant.

24. After a few months, the respondent decided she wanted to move to an area with more English-speaking neighbors. At her insistence, the family then moved to a town south of Jerusalem with many English-speaking families, renting another townhouse for a year.

25. Respondent sold the family's house in Massachusetts. The house was titled in her name.

26. During the spring of 2005, petitioner was obligated to travel to the United States several times due to a hostile takeover of a company, which threatened his livelihood. This angered the respondent. She began to tell her neighbors that petitioner was abusive and refused to support her. She even filed an action for

6

child support in Israel. Petitioner has never been abusive towards her and has always supported her.

27. On June 26, 2005, while the petitioner was in the U.S., the respondent applied for cancellation of the exit restrictions upon herself and the children, supported by a false affidavit. The case was set for hearing on July 17, 2005. The respondent never notified the petitioner of the court proceeding or hearing date. The petitioner was scheduled to return home on July 14, but he was delayed in returning to Israel until July 25 due to delays caused by respondent's attorney in the closing on the home.

28. On July 17, the Israeli Rabbinical Court cancelled the exit restrictions. The respondent purchased one-way plane tickets to the United States for herself and the children and emptied the family's home of all goods and furnishings. She and the children arrived in the United States on or about July 25, 2005.

29. The petitioner arrived home to an empty house with no idea what had happened to his wife and children. After a time, petitioner learned that his wife and children were staying in Sharon, MA.

30. The children have told the petitioner that their mother has told them that they will never be returning to Israel.

31. On the very date respondent was in the airplane, her attorney filed frivolous divorce papers in Norfolk County, Massachusetts. She applied for, and received, ex parte orders of custody.

32. In light of the Israeli Code and the Convention, all six children are currently being illegally held in custody, confinement, and restraint by respondent. Unless this Court takes immediate action to bring respondent and the children before the Court, irreparable harm will occur to the well-being of the children, in that all are

7

being denied proper access to their father and home, and are being used by the respondent to further her own agenda of anger and revenge.[3]

33. The petitioner has never acquiesced or consented to the removal or retention of the children outside Israel, as shown by his prior actions in obtaining court protection after the respondent's previous threats to abduct the children.

## V. Provisional Remedies

34. Petitioner requests, for the well-being of the children, that he be given immediate access to the children, pending further hearing in this court.

35. Petitioner further requests an immediate order prohibiting the removal of the children from the jurisdiction of this Court, taking into safe-keeping all of the children's travel documents and setting an expedited hearing on the Petition for Return of Children to Petitioner.

## VI. Notice of Hearing

36. Pursuant to 42 U.S.C. § 11603(c), respondent will be given notice of any hearing in accordance with M.G.L. c. 209B § 6, the Massachusetts Child Custody Jurisdiction Enforcement Act.

## VII. Attorney's Fees and Costs Including Transportation Expenses Pursuant to Convention Article 26 and U.S.C. 11607

37. Petitioner has incurred substantial expenses as a result of the wrongful removal and retention of the children by respondent. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

---

[3] Anger and revenge, not love for the children, are frequently cited as the motivations behind the abducting parent's actions. Ernie Allen, The Kid is With a Parent, How Bad Can it Be? The Crisis of Family Abduction, citing Geoffrey L. Grief and Rebecca L. Heger, When Parents Kidnap: The Families Behind the Headlines. The Free Press, New York, New York, 1993, p. 34.

8

38. Petitioner respectfully requests that this Court award all legal costs and fees incurred to date as required by 42 U.S.C. 11607, reserving jurisdiction over further expenses.

## VIII. Declaration Pursuant to Uniform Child Custody Jurisdiction and Enforcement Act

39. The details regarding the children that are required to be provided under the UCCJEA are as follows:

    a. The present forced location of the children is 115 Brook Road, Sharon, MA.

    b. In the last two years, the children have lived first at 70 Ashcroft Road, Sharon, MA, then at 60 Kohav Yakov, Israel, then at 43 Shivtei Yisrael, Netivot, Israel, then at 85 Neve Noy, Netivot, Israel, finally at 412/1 Nof Haradyon Street, Neve Daniel, Gush Etzion, Israel.

    c. Both parties are participating in proceedings involving the children in Israel. One is file number 314168097. Copies of pleadings not attached hereto will be made available as soon as possible. In addition, the respondent has filed a divorce proceeding in Massachusetts, case number 04D0759.

    d. Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the children.

## IX. Relief Requested

**WHEREFORE**, petitioner Perry Antelman respectfully requests the following relief:

    a. an Order directing the prompt return of the children to their habitual residence of Israel;

9

b. the issuance of an immediate Order prohibiting the removal of the children from the jurisdiction of this Court pending decision on the merits;

c. an Order granting petitioner immediate access to the children;

d. an Order directing the respondent to pay the petitioner's legal costs and fees; and

e. any further relief as justice may require.

Respectfully submitted,

/s/ Carol J. King
Carol J. King BBO# 600853
Wallace Law Office, P.C.
One Post Office Square
Sharon, MA 02067
(781) 793-0575

## VERIFICATION

I, _PERRY ANTELMAN_, solemnly declare and affirm under penalties of perjury and the las of the United States of America, that the contents of the foregoing Petition are true to the best of my knowledge, information and belief.

_Aug. 24, 2005_
Date

_Perry W. Antelman_
Perry W. Antelman

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Antelman v. Antelman__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    - [ ] I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
    - [✓] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases
    - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.
    - [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.
    - [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]    NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

    YES [ ]    NO [✓]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]    NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]    NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [ ]    NO [ ]

    A. If yes, in which division do all of the non-governmental parties reside?

       Eastern Division [ ]    Central Division [ ]    Western Division [ ]

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Carol J. King, Wallace Law Office, P.C.__
ADDRESS __One Post Office Square, Sharon, MA 02067__
TELEPHONE NO. __781-793-0575__

(CategoryForm.wpd - 5/2/05)

LR 83.5.3 attorney submitted application for admission with complaint - Hme 8/30/05

≋JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Antelman, Perry W.    412/1 Nof Haradynon Street
Neve Daniel    Gush Etzion    Israel

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Carol J. King, Wallace Law Office, P.C. One Post Office Square
Sharon, MA 02067    781-793-0575

## DEFENDANTS
Antelman, Barbara Kausits    115 Brook Road
Sharon, MA 02067

County of Residence of First Listed Defendant    Norfolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Henry Katz    17 Crest Road    Sharon, MA 02067

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | PERSONAL PROPERTY | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 11601
Brief description of cause:
Petition for return of children - Hague Convention Civil Aspects of International Child Abduction

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE 8/20/05
SIGNATURE OF ATTORNEY OF RECORD    Carol J. King

FOR OFFICE USE ONLY

RECEIPT # ____    AMOUNT ____    APPLYING IFP ____    JUDGE ____    MAG. JUDGE ____