UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PERRY W. ANTELMAN
    Petitioner

V.                                           Case No. 05 CV 11786 WGY

BARBARA A. KAUSITS also known as
BARBARA A. ANTELMAN
    Respondent

## VERIFIED ANSWER OF RESPONDENT
## BARBARA A. ANTELMAN
## TO VERIFIED PETITION OF PERRY W. ANTELMAN

I Barbara A. Antelman also known as Barbara A. Kausits hereby depose and state of my own personal knowledge the following:

Introduction

1. I am married to the petitioner Perry W. Antelman (husband) and we are the parents of six children under the age of 13 and am pregnant with our seventh child.
2. I have physical custody of the children and am now and always have been their custodial parent and I have temporary custody of the children by order of the Norfolk Probate and Family Court in Complaint for Divorce case no. 04D0759 DV1 entitled Kausits v. Antelman.
3. I have lived nearly my entire life in the United States as have my husband and our children.
4. Neither I nor the six minor children of the parties are habitual residents of the State of Israel subject to the Hague Convention.
5. I am pregnant with my seventh child and am due to deliver him this month; no argument can be made that he will not be subject to the Hague Convention.

6. My husband and I experienced marital difficulties in recent years and my husband moved out of the marital home from 2003 until the late summer or early fall of 2004.
7. His contact with the children during this period of separation was primarily via facsimile and telephone.
8. During this period of separation, I filed a Complaint for Separate Support in the Norfolk County Probate and Family Court.
9. During this period of time, In the late summer of 2004, the real estate at 70 Ashcroft Road, Sharon, MA where I and the six children lived was being foreclosed and I needed $10,000.00 to bring the mortgage current.
10. I confronted my husband.
11. My husband refused to provide money necessary.
12. I borrowed money from the community in Sharon to pay the mortgage.
13. He obtained a 209A restraining order against me which subsequently he agreed to modify in Norfolk Probate and Family Court but did not vacate the restraining order.
14. Despite the fact that we had been living apart and existence of the 209A restraining order and against my wishes, he moved back into the marital home, refused to leave
15. I immediately sought and obtained a restraining order against him and an order that he vacate the residence.
16. I am informed and believe that the Norfolk County District Attorney's office notified the Department of Social Services about my husband's violent behavior toward me and risk to the children.
17. However, at that time, I was not aware that D.S.S. became involved due to my husband's behavior and my husband informed me that D.S.S was investigating me and my care of the children.
18. He also informed me that he had obtained criminal charges against me in the State of Rhode Island for assaulting him.
19. Further he told me that unless I ran away from Massachusetts, I was in danger of arrest and loss of my children.
20. He suggested that we go to New York and then Israel for a vacation during the Jewish Holy Days in the fall of 2004.
21. I agreed to travel to Israel for a vacation, only, and understood that our trip would be brief.
22. Consistent with the nature of our trip, he obtained round trip tickets for us and we were scheduled to return in or about October 2004.
23. We left our home, clothing, toys, furnishings and other house hold articles, tropical fish, and registered automobile, our children were enrolled in school and had scheduled doctors' appointments and we traveled to Israel all of which was consistent with the understanding that we would be returning.
24. When we arrived in Israel, we traveled about the country as tourists and lived for a period of time with his sister.
25. We continued to have marital difficulties during this time and went to a Rabbi to express serious conflict between us, general marital breakdown, his

|     | |
| --- | --- |
| | physical and psychological abuse of me and arguments about returning to the United States. |
| 26. | At this time, the children were not enrolled in schools, had no health insurance and were not "habitually residents" of Israel. |
| 27. | On or about October 27, 2004, shortly after the time I expected to be returning to the United States with the children and my husband, he obtained, without prior notice to me, an EKUV against me and the children. |
| 28. | An EKUV is an order of an Israeli Rabbinic Court which is enforceable by civil authorities and which prohibited us from leaving Israel. |
| 29. | In effect, from what I believed was a temporary visit, had become a confinement. |
| 30. | We were trapped in Israel. |
| 31. | My husband obtained the EKUV by alleging that we were experiencing marital difficulties which he wished to resolve and that if I were allowed to return to the United States his hope of reconciliation would be lost. |
| 32. | He represented that I would return to the United States unless the EKUV were granted. |
| 33. | He represented to the Rabbinic Court that for "peace in the house" I must be prevented from leaving Israel so that we could work to save our marriage. |
| 34. | Under Jewish Law as I understand it, a wife must submit to her husband and I submitted. |
| 35. | After he obtained the EKUV, when I became pregnant with our seventh child, he did not provide health insurance for me which can be obtained in Israel for approximately $20.00 per month. |
| 36. | The first residence he obtained for us, was in Netivot, Israel, which is a Moroccan Jewish village in the Negev desert in the south of Israel near the Gaza strip where very few people speak English. |
| 37. | I and the children did not and do not speak Hebrew and were totally isolated from the other members of the village. |
| 38. | I am a convert to Judaism. |
| 39. | He told me that the house in Sharon, which was in my name alone, was again being foreclosed and it must be sold in order to recover a considerable amount of equity. |
| 40. | I agreed to sell the home in Sharon rather than lose the equity even though selling it would make it more difficult for me to return to the United States. |
| 41. | In March 2005, he returned to the United States in an effort to sell the real estate at 70 Ashcroft Road, Sharon, MA. |
| 42. | He negotiated a purchase and sale agreement with the buyers and received money from them in advance of the closing. |
| 43. | On or about May 29, 2005, he proceeded to the Norfolk Count Superior Court and filed a complaint seeking a court order which would give notice to a prospective purchaser that he had an interest in the property or an injunction preventing the sale to the buyers while he negotiated with me the disbursement of the proceeds from the sale. |

44. At that point in time, no purchase and sale agreement had been executed although the terms of sale had been negotiated by him but were not agreeable to me.
45. My husband presented papers to the Norfolk County Superior Court which he claimed were prepared by him and which did not inform the court that I was in Israel and subject to an EKUV.
46. The Norfolk County Superior Court issued a short order of notice compelling me to appear in two days before the court to oppose my husband's action.
47. My husband transmitted to me in Israel some of his pleadings and the court's order.
48. I caused to be filed a complaint for divorce in the Norfolk County Probate and Family Court.
49. On August 9, 2005, I appeared in the Norfolk County Probate and Family Court and obtained a number of orders among which were an order granting me temporary custody of the minor children and permission to sell 70 Ashcroft Road, Sharon, MA, real estate title to which was in my name, and use the proceeds to provide support for myself and the children and pay for attorney's fees.
50. My husband has provided no support for me and our children and his attorney has told my attorney that he has no intention of providing support for me so long as I remain in the United States.
51. On August 16, 2005, a hearing was held in the Norfolk County Probate Court at which time my husband sought an order directing that the proceeds from the upcoming sale of the real estate be placed in escrow thereby seeking to protect his financial interest and deny me money to support myself and the children.
52. At that time, my husband did not proceed under the Hague Doctrine and did not seek a modification of the Probate court's order which gave me temporary custody of the minor children and made no offer to support me and our six children.
53. Additionally, when his attorneys were asked by the court whether my husband intended to appear and litigate the question's presented in the divorce (divorce, custody, visitation, support, division of marital property and allocation of marital debt) his attorneys answered no and expressed the intention to rely upon a motion to dismiss but did not press the motion to dismiss.
54. The court after hearing denied the request for relief.
55. The present action taken by my husband is a retaliation against me for retaining the proceeds from the sale of the property at 70 Ashcroft Road, Sharon and not intended to resolve issues of custody or visitation –whether in this country or Israel and he has caused creditors, including his father Rabbi Marvin Antelman to sue me for money which was advanced to my husband.
56. My husband has told people that he will cause me to drain every penny I recovered from the sale of the Sharon property in litigation in one court or another because I took "his money".

57. My husband has rejected every attempt by me and my lawyers to resolve all issues involving our marriage amicably, expeditiously and equitably and instead prefers to destroy his children along with me.

Response to Specific Allegations in Verified Petition

58. As to allegations in Paragraph 4 of Petition, Israel was never the children's habitual residence. Their residence was at 70 Ashcroft Road, Sharon, MA. When we left for Israel in or about September 2004, we left clothing, food (some perishable), pets, toys, and dishes in the dish rack. We had registered automobiles, health insurance, private schools for the children, household furnishings, household supplies and clothing. We left photographs, projects prepared by the children. We had doctor's appointments scheduled in October 2004 when we returned and had purchased round trip tickets.

59. Additionally as allegations in Paragraph 7 of Petition:
    (a) the children were not wrongfully removed from Israel but returned to their native home.
    (b) We traveled to Israel in September 2005, for a vacation and for the first months in Israel we traveled around Israel as vacationers.
    (c) My husband obtained an EKUV against me and the children preventing us from leaving the country and stole my passport and the children's passports as further means of keeping us in Israel against our will.
    (d) We did not "formally immigrate" to Israel in 1995, and have always considered ourselves Americans.
    (e) Although, it is true that we built a house in Israel, we built it while we were living in the United States; and the home in Sharon was purchased on or about June 1, 2000, and it was to be the home for me and the children.
    (f) From the fall of 2003 to the fall of 2004, my husband did not reside in the home in Sharon.
    (g) The allegation that the children were absorbed into Israeli culture is utterly false, as he well knows.
        i.   Neither they nor I speak the Hebrew and for months my husband had us housed in a village inhabited almost exclusively by Moroccan Jews and an irreligious neighborhood that the children were not accustomed to at all.
        ii.  The children complained and cried that they wished to go home.
        iii. As my husband alleges, we relocated in Israel after my pleas, he realized that forcing us to live among people from Morocco and very small number of Americans was damaging to me and the children.

51. As to the allegations in Paragraph 8 of Petition:
    (a) I have filed a complaint for Divorce in Norfolk County Probate and Family Court which has ordered that I have temporary custody of our

5

        minor children. What ever rights my husband has regarding custody may be determined in that court.

        i. On or about August 16, 2005, a hearing was held in the Norfolk County Probate and Family Court in which my husband, represented by two lawyers argued that the proceeds from the sale of my home at 70 Ashcroft Road, Sharon, MA should be placed in escrow and that I should not be able to use the proceeds to support myself and our minor children.

        ii. My husband's lawyers argued that I should be able to use $20,000.00 only for family support.

        iv. My husband has provided no financial support for me and our children and has represented that he will not provide support for us unless and until we return to Israel where he will or has filed for divorce.

        v. He made no argument before the court for custody or visitation.

        vi. He made no argument that the Hague Convention applies.

        vii. He presented argument that contesting the jurisdiction of the Norfolk Probate and Family Court lacked jurisdiction but did not press those arguments.

60. As to allegations in Paragraph 10 of Petition:

    (a) I never threatened to wrongfully remove the children from Israel and based upon his representations to me, understood that we would be living in Israel temporarily and expressed a desire to return to Sharon as he promised.

    (b) Our trip to Israel was all based on the false pretenses—there was never an attempt at reconciliation.

    (c) I did not wrongfully remove the children from Israel but returned them home. I did not secrete them upon arriving in the United States but resided, first, on Brook Road, Sharon, MA where my husband spoke to them on occasion and told them that he would take them back to Israel and emailed my son, and told the children they would come to Israel before he would come to the United States and your mother can stay in the United States.

    (d) The children told him that they are happy to be home with their friends and familiar surroundings and did not want to live in Israel.

    (e) When they told him that they were happy, he told them that, despite a history of traveling back and forth to Israel on business in Rhode Island and the Boston area, he would not and could not see them because of a court order obtained by their mother.

    (f) In the past two years, the husband has expressed the desire to live in Israel and even attempted, over my objection, to leave our oldest daughter Natiya, with his sister in Israel.

        i. My husband told me that he thought of leaving Natiya in Israel.

        ii. In or about April 2004, the husband and Natiya traveled to Israel where his family emigrated from the Boston area and now resided.

6

    iii. I spoke to my husband's sister Rhonda Attar and she assured me that she would promise a safe return of Natiya who was then 11 years old.
    iv. At the time of this conversation, my husband was consulting with Attorney David Grossack in the Boston area about how Natiya could leave the United States and go to Israel.

61. As to allegations in Paragraph 11 of Petition:
  (a) I have no knowledge of request for return but know that he appeared in Norfolk County Probate and Family Court to argue over the disbursement of proceeds from the sale of the real estate at 70 Ashcroft Road, Sharon, MA but did not seek any modification of temporary order of custody to me which was issued by that court.

62. As to allegations in Paragraphs 12 – 14 of Petition:
  (a) I did not wrongfully remove the children from Israel but returned them to their home.
  (b) The children are in Sharon, MA where they have resided for five years.
  (c) I deny that my husband has rights of custody which will be affected by the removal to the United States and expect that since he spends approximately half the year in this area, his contact on an annual basis will be no different if the children reside in the United States or Israel.
  (d) This petition is a veiled attempt to force me to return to Israel where he expects that he will be ordered to provide less support for me and our children.
  (e) The issue in this case, is not custody and visitation, but financial issues as manifested by the issues raised in the Norfolk Probate and Family Court in August 2005.

64. As to allegations in Paragraph 15 of Petition:
  (a) The children were not wrongfully removed from Israel but returned to their home in Sharon, MA. My husband has had telephonic conversations with the children in which he told them that he would bring them back to Israel and they would not be able to see me and he could not see them because of a court order.
  (b) I do not control telephone access between the children and their father, while residing at 115 Brook Road, Sharon, MA. the husband was free to call and the owners' of that location were instructed to permit the father to speak with the children whenever he called. For the last two weeks, the family has relocated and telephone service has not been installed. The father has the telephone number and may call the children as often as possible as soon as the telephone is installed.

65. As to the allegations in Paragraph 16 of Petition:
  (a) We traveled to Israel for a vacation not to reside there permanently.
  (b) We did not reconcile but sought counsel from a Rabbi in Israel who was aware of my desire to leave Israel and return home with our

               children and aware of the fact that our marriage had irretrievably broken down.

(c) We had a serious and irretrievable breakdown of our marriage which did not change in Israel.

(d) But for the EKUV which the husband obtained I would have returned with the children to Sharon, MA in the late fall of 2004.

(e) There is no dispute that our marriage was broken down while we lived in the United States and did not improve while in Israel:

    i. My husband and I lived apart throughout 2003;

    ii. We each obtained restraining orders and my husband told me that he had obtained a criminal complaint against me in the State of Rhode Island and I would be arrested and jailed there.

    iii. He also told me that Department of Social Services was investigating me (I recently learned that they were actually investigating him) and that I was in danger of losing the children;

    iv. Based upon his representations to me I agreed to travel to New York with him to work on our marriage and then take a vacation trip to Israel to see if we could resolve issues between us.

    v. When we left for Israel, the house was left in disarray; we had scheduled doctors' appointments; children enrolled in school; pet fish in the tank; food in the refrigerator and cabinets; all of our clothes; automobile all waiting for our return after the Jewish Holy Days;

    vi. I never intended to reside in Israel permanently and he told me that we would be there only for a vacation until after the High Holy Days;

    vii. If he told me that we were making our home in Israel permanently, I never would have gone.

    viii. Before he obtained the EKUV against me and the children, I repeatedly expressed the desire to go home with the children especially because we had purchased round trip tickets.

    ix. In contrast, my husband maintained an apartment in Rhode Island, while we lived in Sharon and frequently spent nights there until 2003 when he moved to the apartment permanently.

    x. Additionally, during 2003 and 2004, he gave me little financial support and only a few months health coverage while he traveled back and forth to New York City on weekends and kept a three bedroom apartment in Rhode Island.

    xi. Once he had us locked in Israel, he continued to travel to the United States claiming business interests.

    xii. It is believed that whether the children were here or in Israel there relationship with their father would be the same.

66. As to the allegations in Paragraph 17 of Petition:

    a. We spent a few days in New York, but I never agreed to live in Israel permanently.
    b. Round trip tickets were purchased for the return trip which was scheduled for the end of the Jewish Holy Days and would enable us to return to life in Sharon.
67. As to the allegations in Paragraph 18 of Petition:
    a. The allegations are entirely false except for the fact that I did not and do not speak Hebrew.
68. As to the allegations in Paragraph 19 of Petition:
    (a) The children and I were being held in Israel against our will.
69. As to the allegations in Paragraph 20 of Petition:
    (a) My passport was stolen by my husband, the children's passports were concealed by him.
70. As to the allegations in Paragraph 21 of Petition:
    (a) The allegations are false.
71. As to the allegations in Paragraph 22 of Petition:
    (a) The husband obtained an EKUV without notice to me which prohibited me from leaving Israel with our children.
    (b) I never received notice of pending hearing before the Rabbinic Court in November 28, 2005 (sic).
    (c) Even if I had received notice of a pending hearing, because: I am a convert to Judaism; my husband's father is a Rabbi who "wrote and published a book on Jewish Divorce; do not speak Hebrew; know that women's rights are subservient to men; know that Rabbinic Courts will encourage a woman to stay in a marriage regardless of how abusive; I was thoroughly intimidated.
72. As to the allegations in Paragraph 23 of Petition:
    (a) A lease was signed but the children were not enrolled in school, in fact they were home with me from the last week in March of 2005.
73. As to the allegations in Paragraph 24 of the Petition:
    (a) My husband admits that he had me and our children who do not speak Hebrew residing in a community which did not speak English.
74, As to the allegations in Paragraph 25 of the Petition:
    (a) In March 2005, he returned to the United States in an effort to sell the real estate standing in my name at 70 Ashcroft Road, Sharon, MA.
    (b) He negotiated a purchase and sale agreement with the buyers.
    (c) On or about May 29, 2005, he proceeded to the Norfolk Count Superior Court and filed a complaint seeking an order either giving notice to prospective purchaser that he had an interest or an injunction preventing the sale to the buyers.
    d) At that point in time, no purchase and sale agreement had been executed although the terms of sale had been agreed.
    e) The Norfolk County Superior Court was not informed that I was in Israel by my husband.

    f)     The Norfolk County Superior Court issued a short order of notice to appear in two days.

    (g)     On _____ I caused to be filed a complaint for divorce in the Norfolk County Probate and Family Court.

    (h)     On _____ I appeared in the Norfolk County Probate and Family Court and obtained an order granting me temporary custody of the minor children and I was given permission to sell 70 Ashcroft Road, Sharon, MA, real estate title to which was in my name, and use the proceeds to provide support for myself and the children and pay for attorney's fees.

    (i)     My husband has provided no support for me and our children and his attorney has told my attorney that he has no intention of providing support for me so long as I remain in the United States.

    (j)     On August , 2005, a hearing was held in the Norfolk County Probate Court at which time my husband sought an order directing that the proceeds from the sale of the real estate be placed in escrow to deny me money to support myself and the children.

    (k)     At that time, my husband did not proceed under the Hague Doctrine and did not seek a modification of the court's order giving me temporary custody of the minor children of the parties and made no offer to support me and our six children.

    (l)     Additionally, when his attorneys were asked by the court whether my husband intended to appear and litigate the question's presented in the divorce (divorce, custody, visitation, support, division of marital property and allocation of marital debt) his attorneys answered no and expressed the intention to rely upon a motion to dismiss and contended that the Probate Court lacked jurisdiction in the matter but did not press the motion to dismiss.

    (m)     The court after hearing denied the request for relief.

75. As to the allegations in Paragraph 26 of the Petition:
    (a)     My husband told me that he wished to travel to the United States in March 2005 to attend a trade show.
    (b)     Any attempt to defend against a hostile takeover of the business was under the control of my husband's father, Rabbi Antelman who is a chemist and major operative of the business.
    (d)     During this period of time, my husband was in the United States from March 2005 to the end of July 2005 and much of the time he spent arranging the sale of the Ashcroft Street property, notifying creditors to place real estate attachments on the property, selling personal belongings and sentimental items of mine in the house, trashing other personal belongings, and shipping still other personal belongings to Israel.

76     A to the allegations in Paragraph 27 of Petition:

10

   a) The scheduled July 17th hearing was determined based upon my husband's expected return date.
   b) I do not know why my husband would need to be at the transfer of title and why he needed to delay the return to Israel.

77 As to the allegations in Paragraph 28 of Petition:
   a) I did not empty the Israeli property of goods and furniture before leaving to the United States as is falsely claimed.

78 As to the allegations in Paragraph 30 of Petition:
   (a) I did not discuss the marital problems with the children or where they will be living.
   (b) However, the children are thrilled to be home.
   (c) Additionally, they are very disturbed by statements which the husband made in which he indicated that they would be living with him in Israel and would not see their mother.

79. As to the allegations in Paragraph 31 of Petition:
   (a) Complaint for divorce was filed in Norfolk Probate and Family Court which I am informed can consider this petition and determine whether the Complaint for divorce is "frivolous" and whether this action can be sustained.
   (b) I appeared in the Norfolk County Probate and Family Court and obtained an order granting me temporary custody of the minor children and I was given permission to sell 70 Ashcroft Road, Sharon, MA, real estate title to which was in my name, and use the proceeds to provide support for myself and the children and pay for attorney's fees.
   (c) My husband has provided no support for me and our children and his attorney has told my attorney that he has no intention of providing support for me so long as I remain in the United States.
   (d) August , 2005, a hearing was held in the Norfolk County Probate Court at which time my husband sought an order directing that the proceeds from the sale of the real estate be placed in escrow to deny me money to support myself and the children.
   (e) At that time, my husband did not proceed under the Hague Doctrine and did not seek a modification of the court's order giving me temporary custody of the minor children of the parties and made no offer to support me and our six children.
   (f) Additionally, when his attorneys were asked by the court whether my husband intended to appear and litigate the question's presented in the divorce (divorce, custody, visitation, support, division of marital property and allocation of marital debt) his attorneys answered no and expressed the intention to rely upon a motion to dismiss and contended that the Probate Court lacked jurisdiction in the matter but did not press the motion to dismiss.
   (g) The court after hearing denied the request for relief.

80. As to the allegations in Paragraphs 32 through 39 of Petition are denied.

Wherefore respondent prays that the petition be denied.

Respectfully submitted by,

Henry D. Katz, Esquire
Attorney for the Respondent
14 Crest Road
Sharon, MA 02067
781 784 3352
BBO#261140

I Barbara A. Antelman also known as Barbara A. Kausits solemnly declare and affirm and subscribe under the pains and penalties of perjury that I have reviewed the contents of this affidavit and the contents are true to the best of my knowledge, information and belief.

Dated: 9-7-05

Barbara A. Antelman

12

## CERTIFICATE OF SERVICE

I, Henry D. Katz, hereby certify that on this <u>13th</u> day of <u>December</u>, 2005, I delivered a copy of the within document, by mailing said copy, postage prepaid to the attorney of record for the plaintiff, Carol J. King, Esquire, Wallace Law Office, 1 Post Office Square, Sharon, MA 02067.

_____
Henry D. Katz