UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PERRY W. ANTELMAN,                                    No. 05-CV-11786-WGY
          Plaintiff.

v.

BARBARA KAUSITS,
a/k/a BARBARA ANTELMAN,
          Defendant.

# DEFENDANT'S FURTHER RESPONSE TO PLAINTIFF'S MOTION TO REOPEN

## 1.0  Response

1.1   The Defendant, Barbara Kausits (Wife) further opposes the Plaintiff's, Perry

Antelman's (Husband), motion to re-open the case because the sole basis for

his motion is now moot.

## 2.0  Relevant Background Facts and Supporting Documents.

2.1   Husband's motion claimed Wife failed to settle after their ADR session.

2.2   In response, Wife filed an opposition, incorporated herein.

2.3   Thereafter, on June 22, 2006, Wife signed a detailed written Separation

Agreement (Exhibit 1).

2.4   While the agreement does not contain everything each party hoped for, it is

well within reason.

2.5   More to the point, the Agreement signed by wife is substantially similar to

Page 1

that which was agreed during the February 2006 ADR session.

2.6    The Wife will not sign an agreement that requires her to sign joint income
       tax returns with Husband, who claims he has not filed such returns - ever!
       Husband insists she so agree. It is Wife's counsel's opinion that the probate
       court judge will not order her to sign joint tax returns.

2.7    It may be said, at best, Husband would be foolish to take the stand to testify
       in this court in face of this "issue" at which point he testimony, such as it is,
       may not be credited by the finder of fact.

2.8    Further, Wife did not agree to Husband's request that there be provisions for
       what he called "happy days" and "sad days." Again, it is Wife's counsel's
       opinion that the probate judge will not order such provisions, which are well
       outside one standard deviation of what is typically ordered.

2.9    Also, Husband has now rented a house in Sharon, MA on what she is told is
       a one-year lease.

2.10   Wife shares with the court her view that Husband is just trying to use the
       pendency of this case as another hammer which he wants to hold over her
       head to try to get her to buckle under to his unreasonable demands for terms
       in a settlement.

2.11   This court ought not to let itself be used as one of Husband's instrument of

oppression.

## 3.0   Conclusion.

3.1    Based on the Defendant's opposition previously filed and on this further

opposition, the court should deny Plaintiff's motion to re-open this case.

June 29, 2006                                Respectfully submitted,
                                             **Barbara Kausits** by her attorneys,
                                             **NISSENBAUM LAW OFFICES**

                                             By: _Gerald L. Nissenbaum_
                                             Gerald L. Nissenbaum, BBO#372400

                                             By: _Wendy J. Overbaugh (by GLN)_
                                             Wendy J. Overbaugh, BBO #657457
                                             160 Federal Street - 24th Floor
                                             Boston, MA 02110
                                             (617) 330-9090;        fax at: 6090

### Certificate of Service

I hereby certify that a copy of the foregoing was served on counsel for the Plaintiff by e-mail to their respective addresses of record.

June 29, 2006                         _Gerald L. Nissenbaum_

N:\wpwin\Kausits v  Antelman\Federal Ct - Hague Petition\06.29.06.Further Oppose Reopen.wpd

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
PROBATE AND FAMILY COURT DEPARTMENT

NORFOLK, DIVISION                              No. 04D-0759

**BARBARA KAUSITS**
**a/k/a BARBARA ANTELMAN,**
            Plaintiff,

v.

**PERRY ANTELMAN,**
            Defendant.

# SEPARATION AGREEMENT
# June ___, 2006

## I.    PARTIES.

The parties to this Agreement are:

a.    Barbara Kausits, a/k/a Barbara Antelman, born 9/24/67, of 11 Grove Street, Sharon, Norfolk County, Massachusetts 02067 (Wife / Mother); and

b.    Perry Antelman, born 2/13/64, of Sharon, Norfolk County, Massachusetts 02067 (Husband / Father) (collectively, parties).

## II.    BACKGROUND.

The parties were married at Jerusalem, Israel, on August 13, 1991. Seven children were born of their marriage, each birth occurring in Rhode Island, USA. Their names and dates of birth are:

1.    Natiya Rivka Antelman, born August 11, 1992, now age 13;

Antelman Agreement                                              _____ Husband
No. 04D-0759-DV1              Page 1                     _____ Wife

2.   Nediv-lev Ahron Antelman, born March 5, 1994, now age 12;
3.   Nihera Hadassah Antelman, born November 19, 1995, now age 10;
4.   Naveh Avraham Antelman, born November 23, 1997, now age 8;
5.   Nuchal Naftali Antelman, born June 23, 2000, now age 5;
6.   Asael Hoshea Antelman, born September 14, 2002, now age 3; and
7.   Yashar Ben Tzion Antelman, born September 14, 2005, now age 10 months.

After marriage the parties lived together as husband and wife in this Commonwealth and last lived together in Sharon, Massachusetts and in Israel, in or about June, 2005.

An irretrievable breakdown in the marriage relationship has occurred, continues and there is no reasonable likelihood they will ever again resume a marital relationship.

## III.   PURPOSE.

The purpose of this Agreement is to settle all matters which should be resolved in light of the above referenced background.

## IV.   AGREEMENTS.

**The parties agree:**

**SEPARATE STATUS.**

1.   Each may continue to live separate from the other, as if sole and unmarried.

2.   a.   Neither shall contract nor incur any debt, charge or liability in the other's name or for which the other may become liable.

b.   Each warrants and represents to the other that he or she has not and will not incur any debt or made any commitment for which the other or his or her

Antelman Agreement
No. 04D-0759-DV1                    Page 2                    _____ Husband
                                                             _____ Wife

estate may be liable; nor used the other's name in order to have credit extended to him or her.

      c.     Except as may be expressly stated elsewhere in this Agreement, all liabilities listed on each party's Rule 401 Financial Statement shall remain that party's own responsibility.

### WAIVER OF ESTATE CLAIM.

3.     Except to enforce the terms of this Agreement, or a judgment of divorce, or as otherwise specified in this Agreement, each:

      a.     waives all rights to the last will made by the other, including dower and curtesy and waives, as well, all rights to take a statutory forced share of the other's estate;

      b.     waives and relinquishes all interests which either may now or hereafter acquire in or to any real or personal property of the other;

      c.     waives and relinquishes all interests which either may now or hereafter acquire in or to any interest in the other's life insurance, pensions, annuities and any other retirement funds, whether named as a beneficiary or otherwise except as set forth in Exhibit B;

      d.     shall renounce and refuse to accept any interest in any of the above described assets and renounce, as well, any interest received from the other's estate, or on account of the other's death, unless specifically provided for in a will executed after the date of this Agreement, except that sufficient assets shall be retained to pay for taxes (including, penalties and interest), if any, which are assessed as a result of the renouncement.

4.    a.     Hereafter, each shall have the right to dispose of his or her property by will, or otherwise, in such manner as each may, in his or her uncontrolled discretion, deem proper.

Antelman Agreement  
No. 04D-0759-DV1               Page 3                  _____ Husband  
                                              _____ Wife

b. Any power of attorney or health care proxy previously given from one party to the other is hereby revoked.

**RELEASES.**

5. Except to enforce the terms of this Agreement and / or the Judgment of Divorce:

a. each hereby releases and forever discharges the other from all claims and obligations which either has ever had, now has or may have against the other up to the date of this Agreement, including but not limited to torts and claims against the property of the other, it being the parties' intention that, after signing this Agreement, there shall exist between them only such rights and obligations which are specifically provided for in this Agreement; and

b. each acknowledges that each has received good and adequate consideration for the above releases from the party being released.

**ENTIRE AGREEMENT.**

6. Neither has made, nor relied upon any promise, warranty or representation, except those expressly made in this Agreement. Nothing which is claimed to have been said or agreed by one party to the other, at any time, place or under any other set of circumstances shall be used to vary the terms of this Agreement.

7. Each accepts the terms of this Agreement in full satisfaction and discharge of all claims, past, present and future, which arise out of the marital relationship, including alimony and a division of property.

**EXHIBITS.**

8. The parties are bound by and will perform the terms set out in **Exhibits A through J** attached hereto, and incorporated herein by reference.

Antelman Agreement
No. 04D-0759-DV1                    Page 4                    _____ Husband
                                                             _____ Wife

**MODIFICATION.**

9.     The terms of this Agreement shall not be altered or modified except by a written agreement signed and acknowledged by both parties and submitted to the Norfolk Probate Court or another Court of competent jurisdiction or by order of the court upon the filing of appropriate pleadings, followed by proof required by law to obtain a modification.

**SURVIVAL OF AGREEMENT AFTER DIVORCE.**

10.     a.     (1)     At any hearing on the Wife's complaint for divorce, a duplicate original of this Agreement may be submitted to the court and incorporated into the Judgment of Divorce.

(2)     Notwithstanding such incorporation, this Agreement shall <u>NOT</u> be merged into the Judgment, but shall survive and have independent legal significance; and be forever binding, **except however, all issues pertaining to the parties' minor children and alimony shall be merged into and become a part of the judgment, modifiable in accordance with the law of this Commonwealth.**

b.     The purpose of this provision is to:

(1)     protect  each against any attempt by the other to vary the articulated and plain meaning of the terms of this Agreement after entry of a Judgment of Divorce; and
(2)     to enable the parties to enforce the terms of this Agreement either as a Judgment of Divorce or as a binding contract in any court with jurisdiction over the property of or over the other party.

Antelman Agreement
No. 04D-0759-DV1                    Page 5                    _____ Husband
                                                            _____ Wife

### STRICT PERFORMANCE.

11.    The failure of a party to insist, in any instance, upon the strict performance of any term, shall not be construed as a waiver. Rather such term shall nevertheless continue in full force and effect.

### VALIDITY / SEVERABILITY.

12.    In the event any part of this Agreement is held invalid, such holding shall not invalidate the entire Agreement. Instead the remaining provisions shall continue to reflect fairly the intent and understanding of the parties and be in full force and effect.

### DEATH.

13.    This Agreement shall be binding upon the parties' respective estate, legal representatives, heirs and assigns; and, as well, upon the parties even if one or both of them die before entry of a Judgment of Divorce, Absolute.

### GOVERNING LAW.

14.    This Agreement is to be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts, which are now in force and effect.

### VOLUNTARY EXECUTION.

15.    a.    Wife has had independent legal advice from Attorneys Gerald L. Nissenbaum and Wendy J. Overbaugh, 160 Federal Street, Boston, Massachusetts, 02110. Husband has had independent legal advice from Attorneys Laura Studen and Francine Gardikas, Burns & Levinson, 125 Summer Street, Boston, MA 02112. Neither has relied upon any legal representation made by counsel for the other, nor has either interpreted any statement made by the other's counsel as legal advice intended for other than the benefit of that lawyer's client.

b.    Each:

(1)    has read this Agreement and fully understands the background, facts and circumstances;

(2)    has been fully and fairly informed of all of his or her legal rights and liabilities;

(3)    believes this Agreement to be fair, just and reasonable under the circumstances; and

(4)    signs this Agreement freely and voluntarily and without any coercion or undue influence by the other.

16.    Each:

a.    has had the opportunity to fully discover the position and circumstances of the other and waives any further discovery and evaluations;

b.    understands the position and circumstances of the other;

c.    has read this Agreement, line by line;

d.    is satisfied with and understands the terms, provisions and conditions of this Agreement; and

e.    solemnly intends to be bound by the terms of this Agreement.

### GOOD FAITH AND FAIR DEALING.

17.    Each will comply with the terms of this Agreement in good faith and with fair dealing.

18. a. Each will, without delay or charge to the other, sign, acknowledge and deliver such documents and other items as are reasonably necessary to effect the terms of this Agreement.

b. Except as stated otherwise, to the extent reasonably possible, all transfers required by this Agreement shall be effectuated within 30 days from the date of this Agreement, with reasonably satisfactory written evidence given by the transferor to the transferee.

19. Unless the context otherwise provides, whenever a number of days is specified for the performance of an act, the time for starting the counting shall begin with the date of this Agreement.

20. Except where one may have specific written authorization, neither party may sign the other's name to any document for any reason.

21. Whenever, per the terms of this Agreement, a party's agreement is required, it shall not unreasonably be withheld or delayed.

**INDEMNIFICATION.**

22. a. Husband shall indemnify and save Wife harmless and the Wife shall indemnify and save Husband harmless from and against all liabilities, claims, losses, damages and expenses, tax or other deficiency, penalty, interest charge, assessment, tax lien or expense, including reasonable accountant's and attorney's fees, costs or disbursements arising from claims made by any taxing authority in the USA or Israel.

b. Each shall indemnify and save the other party harmless from and against all liabilities, claims, losses, damages and expenses, tax or other deficiency, penalty, interest charge, assessment, tax lien or expense, including reasonable accountant's and attorney's fees, costs or disbursements arising his or her breach of their respective promises, warranties and representations in this Agreement.

Antelman Agreement
No. 04D-0759-DV1

Page 8

_____ Husband
_____ Wife

     c.    In the event a third party makes or commences any claim against an indemnified party, the indemnified party shall promptly give notice of the claim to the indemnifying party; and the indemnifying party shall have the opportunity, in good faith and at his or her own expense, to defend any such claim.

**COUNTERPARTS.**

23.    This Agreement is executed in counterparts, each of which is deemed to be an original.

**SIGNED AS A SEALED INSTRUMENT** this _____<sup>th</sup> day of JUNE, 2006

_____         _____
Barbara Kausits, a/k/a Antelman        Perry Antelman

Antelman Agreement
No. 04D-0759-DV1         Page 9         _____ Husband
         _____ Wife

## COMMONWEALTH OF MASSACHUSETTS

Norfolk County                                            JUNE___, 2006

Then, personally appeared   **BARBARA KAUSITS, A/K/A ANTELMAN** and proved to me through satisfactory evidence of identification which was _____, to be the person whose name is signed on the preceding and/or attached document and acknowledged to me that she signed it voluntarily for its stated purpose,

Before me,

_____
_____, Notary Public
My commission expires:

## COMMONWEALTH OF MASSACHUSETTS

Norfolk County                                            JUNE___, 2006

Then, personally appeared   **PERRY ANTELMAN** and proved to me through satisfactory evidence of identification which was _____, to be the person whose name is signed on the preceding and/or attached document and acknowledged to me that he signed it voluntarily for its stated purpose,

Before me,

_____
_____, Notary Public
My commission expires: _____

Antelman Agreement                                        _____ Husband
No. 04D-0759-DV1              Page 10                     _____Wife

# EXHIBIT A - ALIMONY

**ALIMONY.**

1.    Both parties hereby waive any and all right they may have to any past or present alimony or support from the other.

2.    a.    Husband's potential obligation for future alimony to Wife shall end upon the happening of the earliest of the following:

> (1)    Death of either party;
> (2)    Remarriage of Wife, whether said marriage ends by death, divorce or annulment;
> (3)    Order of a court of competent jurisdiction;
> (4)    Husband's retirement no earlier than age 65;
> (5)    Husband's involuntary unemployment whether due to illness or disability, in which event Husband shall file a complaint for modification with a court of competent jurisdiction.

b.    Wife's potential obligation for future alimony to Husband shall end upon the happening of the earliest of the following:

> (1)    Death of either party;
> (2)    Remarriage of Husband, whether said marriage ends by death, divorce or annulment;
> (3)    Order of a court of competent jurisdiction;
> (4)    Wife's retirement no earlier than age 65;
> (5)    Wife's involuntary unemployment whether due to illness or disability, in which event Wife shall file a complaint for modification with a court of competent jurisdiction.

c.    Both parties are obligated to promptly advise the other of his/her remarriage, if any.

Antelman Agreement                                      _____ Husband
No. 04D-0759-DV1                  Page 11                 _____Wife

### MODIFICATION / CONTEMPT.

3. a. Either party may seek a modification of alimony. If either party seeks a modification of alimony on the first such occasion the issue shall be treated as a matter of first impression before the court, so that the party seeking alimony shall not be required to demonstrate or prove a material change in circumstances.

b. The parties agree that earliest either may file a complaint for alimony is January 1, 2008.

4. By way of explanation, the above terms are intended to address, among other things:

a. The present and uncertain future prospects for Husband's various business enterprises and his possible future receipt of income, capital gains or other cash flow;

b. The fact that Wife is not now able to support herself because she is the primary caretaker of the parties' seven children;

c. The fact that the child support provided for in this Agreement does not provide Wife with enough money to fully support herself and the parties' seven children.

5. In order to resolve the case at this time, Wife and Husband agree to not now seek discovery, including possible sources of Husband's income or cash flow to and for Husband's benefit, or the Wife's earning potential or assets. However, in addition to all discovery the parties are entitled to at the time of or in connection with all future complaints for contempt or modification, the parties specifically exclude herefrom any prior waivers of discovery and specifically reserve their right, to seek the discovery that could have, but for this Agreement, was not sought at this time. In other words, Wife's and Husband's future discovery includes his and her right to go back beyond the date of this Agreement and to go behind the Judgment of Divorce.

Antelman Agreement
No. 04D-0759-DV1                    Page 12                    _____ Husband
                                                              _____Wife

6.    Husband and Wife agree that either party may and hereby specifically reserves their right to claim and prove, in any future complaint for modification of alimony or child support that the other party has a greater ability to pay alimony and child support than he or she may now or then claim, including proof that he or she can earn more money by engaging in some other type of employment, such that the Judge may impute income to him or her, which income should, in turn, be considered in determining whether the amount of child support and alimony which a party should pay.  This clause is included in this agreement so as to make clear to any future court considering this matter that the parties are aware of ***Kelley v. Kelley***, 64 Mass. App. Ct. 733 (2005) and do not want either party to be foreclosed from making the above arguments at any future point(s) in time.

(End of Exhibit A)

_____ Husband
_____ Wife

# EXHIBIT B - DIVISION OF PROPERTY

The parties agree that all of their assets have been considered.

**REAL ESTATE.**

**Sharon, MA.**

1.    The parties sold their marital home located at 70 Ashcroft Road, Sharon, MA (**Marital Home**.)  Wife received approximately $179,000 in net proceeds from the sale (Proceeds), which proceeds have been in Wife's control, most of which was spent.

**Bet Shemesh, Israel.**

2.    a.    The parties own a house in Bet Shemesh, Israel (**House**) which is under agreement for sale.  The net proceeds are expected to be approximately, $75,000, from which $23,300 will be subtracted for the Wife, leaving $51,700 to be paid to Husband.

**BANK ACCOUNTS.**

3.    The parties have no joint bank accounts at this time.  The parties individual bank accounts or assets, which are reflected on the following marital balance sheet; and which shall remain their individual property.

**RETIREMENT ACCOUNTS.**

4.    The parties have no retirement accounts.

_____ Husband
_____ Wife

### LIFE INSURANCE.

5.    a.    The Husband has a John Hancock Life insurance policy in the amount of $900,000, naming the Wife as beneficiary. Husband shall obtain an additional $500,000 in life insurance for the benefit of the minor children and Wife and provide Wife with proof of same on or before December 31, 2006. This new policy shall be a term policy and shall run until Yashar's 23rd birthday.

b.    Husband shall, at his sole expense, pay the full quarterly premium on the Policies, in advance on or before each due date.

c.    Husband shall request the life insurance company to automatically provide Wife with copies of all bills and notices regarding said policy. By signing this agreement, Husband authorizes Wife to directly contact the life insurance company and authorizes and directs said company to provide all documents and information about Husband's life insurance policies directly to Wife. In the event John Hancock will not directly provide documentation of said policy to Wife, Husband shall provide Wife with copies of the policy face sheet within 30 days from the anniversary date of the policy each year.

d.    Within 30 days of Husband paying the initial and each installment of or annual premium on the Policies, Husband shall provide Wife with proof of his payment.

e.    Husband shall maintain the Policies until the earliest of:

(1)    Yashar's 23rd birthday;

(2)    his no longer having an alimony or child support obligation (including no longer having an obligation to pay for any child's school or college); or

(3)    the death of Wife, but in the latter event, any such policy shall then be continued in place and be paid to a person to be

designated by the parties in or in accordance with this Agreement (and in default, to be designated by a court of competent jurisdiction.)

f.    At his election, Husband may create a life insurance trust to hold the proceeds of his life insurance policies for the benefit of the parties' children and Husband becomes obligated to pay alimony, for Wife. If Husband creates a trust, he shall name Wife as one of two co-trustees of said trust and, at Husband's election he may name another co-trustee. However, if co-trustee's are named, Wife as the sole surviving parent of the parties' minor children shall have the final say in the event of a dispute between trustees over how funds should be paid out for the children's benefit .

g.    If Husband creates a trust and the trustees receive the proceeds of the policies, the trustees shall hold the funds in trust for the benefit of the children, with payments to be on an as-needed (a so-called, spray and sprinkle) basis for each child, in various amounts as the trustee, in his or her sole discretion decides, until all children have become emancipated. If at the time of Husband's death, Wife is entitled to alimony, the proceeds shall also be used to support Wife. The trustees may also use funds, in their sole discretion, to help support (i) a spouse or significant other of a child; and (ii) a child born of a child of the parties. The trustees may charge reasonable compensation for his or her work.

h.    In the event Husband fails to make timely payments on the premiums for said Policy, Wife may, at her option, make the payments to keep the Policy current and, thereafter, seek reimbursement from Husband or, if necessary, the court.

i.    In the event of Husband's death at a time when said Policy is not in force, Husband's obligation to pay $1,400,000 shall be an obligation of his estate.

j.    In the event Wife becomes employed in a position where, as a benefit of her employment, she would be entitled to participate in a life insurance policy, Wife shall enroll in that benefit. In that event, Wife shall maintain said policy for

so long as she is able as a benefit of her employment and name Husband beneficiary of said policy for the benefit of the parties' children.   Wife, at her election, may also create a life insurance trust to receive any life insurance proceeds upon her death.  If Wife elects to create such a trust, she shall name Husband as a trustee and, at Wife's election, she may name a co-trustee.  In the event co-trustees are named, Husband, as the children's sole surviving parent, shall have the final say in the event of a dispute between trustees over how funds should be paid out for the children's benefit

### PERSONAL PROPERTY.

### Cars.

8.    Each party drives and shall retain as his (1998 Chevrolet Venture) or her (1999 Suburban truck) sole property the car now in his or her possession, free of all claims by the other party.

### Heirlooms & Jewelry.

9.    The parties and each child shall each retain, to the extent applicable, as his or her sole property, any gifts of a personal nature given to each by a parent, grandparent or other relative, as an heirloom, without said value being included in the marital estate. By way of example, Wife was gifted a set of ivory necklace, bracelet and earrings by her grandmother; various children had dolls given to them, Husband was gifted silverware, stamps and an antique clock by his uncle and grandmother.  The value of the heirlooms shall not be included in the value of the marital estate.

### Contents of Container.

10.    a.    The parties' Marital Home was in Sharon, MA, held in Wife's sole name.  Some of the household furniture from the Sharon home was  packed into a container (herein described as "**Container**") which he had shipped to Israel (Container.)

    b.    The Massachusetts Probate Court issued an order, incorporated, herein, requiring the parties to jointly pay storage and other charges necessary to have the Container shipped back to Massachusetts, with each party paying one-half (½) these costs.

    c.    (1)    The Container will be shipped to Wife's rented home at 11 Grove Street, Sharon, MA. Wife advanced $8,000 of the costs in order to facilitate the return of the Container. Husband then advanced the $10,000 deposit he received on the sale of the Israel house toward the container fees. Husband then paid an additional $3,370 and Wife an additional $5,370.

    (2)    In accordance with the Court Order dated April 24, 2006, the Husband shall first reimburse the Wife $13,370 from the sale proceeds of the home for her payment towards the storage of the container in Israel.

    (3)    For purposes of this payment Container costs include, without limitation, storage costs in Israel and elsewhere, insurance, transport back to Massachusetts and unloading the Container. Husband and Wife shall equally pay any remaining costs associated with shipping the container from the port in Boston to Sharon, as well as the unloading of the container. Each party shall be responsible for their own storage costs, if any.

    (4)    A party's failure to promptly pay needed funds is a material breech of this agreement.

    d.    Upon the Container arriving in Sharon, MA it shall be delivered to the yard or driveway of the home in which the Wife and children are now living.

    e.    Upon arrival of the Container, Husband, Wife and children, as the case may be, shall take possession of their heirloom items. The children's items shall be distributed to the children. To the extent that there will be duplicate children's items within Wife's household, said children's items shall be made available to Husband for his residence. Thereafter, the Wife shall have first pick

Antelman Agreement
No. 04D-0759-DV1          Page 18          _____ Husband
                                                      _____ Wife

of an item, Husband second, and they shall alternate picks until the items have been divided among the parties, in accordance with the Court order.

    f.    For purposes of this Agreement, one item would consist of such things as a complete set of dishes, a complete set of glasses, an entire bedroom set, including bed, bureaus, etc. or an entire dining room set including table, chairs and sideboard.

    g.    Family photographs shall be retained by the Wife. She shall keep them safe and at anytime until April 8, 2008 upon written request by Husband, deliver them to a photo lab to be duplicated at Husband's expense.

    h.    After the Container is emptied, it shall be removed, the cost of which shall be shared equally by the parties.

    i.    If Wife's ruby necklace is not in the container, Husband shall use his best efforts to locate same and, if found, return it to Wife.

### Husband's Stock in Closely Held Companies.

11.    Husband owns stock in three closely held companies which are stated on his court-filed Rule 401 Financial Statement and/or reflected on the Marital Balance Sheet, set forth below.

### Marital Balance Sheet.

13.    The values used for Marantech, LLC, Aidance Skincare, Aidance Medical Diagnostics and Tivian Industries have been proffered by Husband. Husband warrants and represents he has used his utmost good faith and fair dealing in establishing these values; and has done so cognizant of his fiduciary duty to Wife. Based upon Husband's specific representation and in order to effectuate settlement now, without the need to pay a business appraiser/CPA/ expert to establish values,

Antelman Agreement
No. 04D-0759-DV1           Page 19           _____ Husband
                _____ Wife

Wife relies upon both Husband's values for these assets and his warranty and representation, as set forth in this paragraph.

| Asset | Value | Wife | Kids Trust | Husband |
|-------|-------|------|-----------|---------|
| Marantech, LLC Stock | $30,000 | | X | |
| Aidance Skincare Membership Units<br><br>Percentages are not percentages of the company, they are percentages of Husband's total ownership units | $60,000 | H to buy out W's interest | 75.4% | 24.6% |
| Tivian Industries Stock | $40,000 | | | X |

14.    Husband shall buy out Wife's ½ interest in his holdings in Aidance Skincare Membership Units which, according to Husband is worth a total of $9,000. Wife's one-half (1/2) interest is worth $4,500. To the extent Husband has any proceeds left from the sale of the house in Israel after payment of his legal fees, he shall use said funds to buy Wife out of this asset. If not, Husband shall make this payment on or before January 1, 2007.

15.    Husband represents that Tivian Industries Stock has declined in value since his September 2005 financial statement. The company has been closed for business and is working on paying off debt. Presently this company receives approximately $40,000 per year from Cohler. Husband represents that this income to Tivian will be used to pay down its outstanding debts. Husband shall provide Wife with annual financial statements showing that Tivian's debt is, in fact, being paid down. When the debt obligation is paid off, the money paid to Tivian by Cohler is expected to be divided equally between Husband and his partner. At that time, the parties shall re-calculate Husband's child support obligation using the percentage he is then paying to his then present income and applying the same percentage to the income from Cohler.

16.    If Husband has either the trundle bed with mattresses which belonged to Wife's father or the bed Wife owned prior to the marriage, Husband shall return same to Wife. In exchange, to the extent there are extra beds in Wife's home, she shall provide same to Husband.

17.    Husband shall give Wife one-half (1/2) of the Mazzuzas owned by the parties.

18.    All property hereafter acquired by either party, all income and earnings of each and all appreciation of all property shall constitute and be the sole and separate property of the person by whom the said property is acquired or earned.

(End of Exhibit B)

# EXHIBIT C
## HEALTH INSURANCE AND UNINSURED MEDICAL EXPENSES

1.    Presently Husband has health and dental insurance for the family through his employer. He shall maintain said policy for the benefit of Wife and the parties' minor children.

2.    In the event Husband remarries and is no longer able to cover Wife under his policy, Husband shall investigate and provide Wife with information and options which would permit Wife to remain insured paying a separate premium through Husband's insurance company, to the extent possible.

3.    In the event Husband obtains employer-provided Health Insurance for the children, a so-called children's Medical QDRO will be presented to the court for approval, after which it shall be filed with the administrator of the Husband's Health Insurance plan.

4.    The parties shall share equally the children's uninsured medical and dental care expenses, including orthodontia, psychiatric care and prescription medication.

5.    If Wife incurs an uninsured expense for the children, she shall, on no more than a monthly basis, submit a copy of the bill(s) or, if paid, the paid receipt(s) or a copy of a check(s) in payment thereof, to the Husband.    Within 7 days of receipt, the Husband shall pay any unpaid bill or, as the case may be, pay Wife for her out of pocket expenses.    Husband's failure to pay these uninsured medical bills or reimbursements to Wife, if she pays those expenses, within thirty (30) days, is a material and substantial breach.

6.    If Husband incurs any uninsured expense for the children, he shall, on no more than a monthly basis, submit a copy of the bill(s) or, if paid, the paid receipt(s) or a copy of a check(s) in payment thereof, to Wife.    Within 7 days of receipt, Wife shall pay any unpaid bill or, as the case may be, pay Wife for her out of pocket expenses.    Wife's failure to pay these uninsured medical bills or

Antelman Agreement
No. 04D-0759-DV1                         Page 22                      _____ Husband
                                                                       _____ Wife

reimbursements to Husband, if he pays those expenses, within thirty (30) days, is a material and substantial breach.

7.    Hereafter, each party shall be solely responsible for his or her own uninsured medical and other health care expenses.

(End of Exhibit C)

## EXHIBIT D – CHILD RELATED PROVISIONS

### LEGAL AND PHYSICAL CUSTODY AND VISITATION (PARENTING TIME.)

1.    a.    The parties shall have shared or joint legal custody of their seven children. The parties shall abide by the parenting plan set forth below. For public school purposes, the children's residence shall be with the Wife.

b.    The parties shall respectfully discuss and jointly decide all major matters related to their children's health, religious and secular education and welfare including, but not limited to, such things as elective medical treatment and after school and summer activities which require financial contribution from the other party. The parties' discussions shall be by e-mail to minimize the potential for any misunderstanding.

c.    As to emergency decisions, the parent whom the child is with, shall make decisions and/or give consent for treatment. However, that parent shall notify the other parent as soon as possible and, to the extent possible, give the other parent an opportunity to participate in decision making / consent.

2.    The Wife shall have physical custody of and parenting time with the parties' minor children at all times when the children are not in Husband's physical custody as specified below in this Exhibit D.

3.    Husband shall have physical custody of and parenting time with the parties' older six children as follows:

a.    Alternate weekends commencing Friday at the conclusion of school when Husband shall pick the children up from their respective schools / day care(s) and extending to Monday morning when he shall drop the children off to their respective schools / day care(s) or at Wife's home as the case may be.

Antelman Agreement
No. 04D-0759-DV1                      Page 24                    _____ Husband
                                                                _____ Wife

b.     In the event the children's school is closed on Monday for a secular holiday following the Father's alternate weekend, his weekend visitation shall automatically extend through said Tuesday morning when he shall drop the children off to their respective schools / day care or Wife's home. In the event a religious holiday is attached to any weekend, the holiday schedule shall supercede the regular parenting plan.

4.     As for the seventh and youngest child, Yashar, now about 10 months old, Yashar shall begin to see Husband on Wednesday nights and on the weekends he has the other children, from Friday evening, before sundown to Saturday evening after sundown. When Yashar is 1 year old, the parties shall ease him into spending the entire weekend with the Husband, as do the other children, and extending to Tuesday if there is a so-called Monday holiday following Husband's weekend with the children.

5.     In the event any of the children are ill, during a time in which they would otherwise be with Husband, at the option of Wife and child, that particular child(ren) may remain home. If, for example, the child is ill on Friday but is feeling better by Saturday afternoon and is healthy enough to join his/her siblings at Husband's home, Wife shall then make the child available for pick up by Husband or, at her option, bring that child(ren) to join the other children at Husband's home. If, however, the child(ren) become ill during Husband's parenting time, Husband is not obligated to return the child(ren) to Wife's home early.

6.     a.     The parties agree to be flexible toward and mindful of their children's needs, particularly because of the wide range of their ages. They understand and accept that from time to time, a child may not go to the Husband's during his scheduled parenting time, for a wide variety of reasons, such as, but not limited to: (i) a child (ren) is ill; or (ii) a child has a particular homework project which they find too difficult to complete at Husband's home for some reason. In such event, Wife will try to be available to care for the child(ren) not going with Husband. If such an event arises with regard to a homework project, the individual child must inform both parents of the school work obligations and each parent agrees to

respect the child's decision and not to unduly influence the child's decision in any way.

b.    Also, in the year leading up to each child making his/her bar or bat mitzvah, the parties shall cooperate in scheduling a time one night per week where Husband will take that particular child to a local library for one hour to assist that child in studying Hebrew.

7.    Husband's current employment requires him to travel to and from Israel on an infrequent basis, sometimes taking him away for 10-12 days. Husband shall give Wife as much advance notice of his travel as he is given, so that she can make necessary arrangements as a result of his missing his parenting time with the children. Husband shall provide Wife with an emergency land line contact number if traveling to a location where he cellular phone may not work. If Wife has a job and is required to work on days that Husband would otherwise, but for his travel schedule, have parenting time with the children, Husband shall be responsible for obtaining appropriate childcare for the children if Wife is not available to care for them.

8.    In the event either party remarries, if a parent is traveling for business during a time that the children would be with them in accordance with the parenting plan, the children shall maintain their schedule and the new spouse shall care for the children in the parent's absence.

**SCHOOLS.**

9.    Presently six of the seven children, and eventually all of the children will be attending school, from pre-school through high school (hereafter, collectively, School.) Presently, Wife serves as homemaker and caretaker.

10.    The parties want their children to attend only Religious Schools. To that end the parties will meet with the Rabbi in charge at each school and work out financing so that the children can attend at minimal to no cost for the upcoming school years. Wife has obtained initial oral confirmation that the children will be

Antelman Agreement
No. 04D-0759-DV1

Page 26

_____ Husband
_____ Wife

able to remain in school but believes if the parties go together they will get further on exact obligations.

11.    In the event the children's current schools will work with the parties so that the children can continue to attend their present schools, Wife shall, at her election, move to the Brighton / Brookline area so that the children's commute to school is significantly reduced.    The parties agree that such a move will not change the parenting plan as stated earlier in this agreement.

12.    In the event one or more of the children are able to obtain scholarships or tuition grants, that will serve to reduce the Parents obligation for those items. Parents shall have the obligation for applying for any such scholarships or grants. Both parties shall cooperate in seeking scholarships and grants for Religious School and College for the children by timely completing and returning financial aid and other forms, providing copies of tax returns or affidavits which will suffice to excuse providing said returns; and the like.

13.    In the event the parties are unable to enroll one or more of the children in Religious schools in any year, the parties will have no choice but to enroll those children in public schools.

### HOLIDAYS AND VACATIONS IN USA.

14.    In the event the children are enrolled in public school the parties shall alternate years in which the children spend their Religious and Secular holidays with each parent, as follows:

    a.    Beginning in 2006 and in all even years thereafter, Wife shall have the children for:

         •    Rosh Hashana;[2]

---

[2] For purposes of this Agreement, Jewish holidays begin 2 hours before sundown on the prior evening; and last until sundown on the day of the holiday.

Antelman Agreement
No. 04D-0759-DV1          Page 27          _____ Husband
           _____ Wife

- Christmas break;
- February school vacation, starting on the Friday at the close of school to Monday morning drop-off at school;
- Last 2 days of Succot; and
- Shavout.

b. Beginning in 2006 and on all even years thereafter, Husband shall have the children for:

- Yom Kippur;
- Thanksgiving break from the close of school on Wednesday until they are to return to school on Monday morning.;
- April school vacation week starting on the Friday at the close of school until they return to school, including Pesach in the event of an overlap,
- 4th of July;
- First 2 days of Succot; and
- Purim.

c. Often times the April school vacation and Pesach overlap. To the extent there is an overlap by four or more days, they shall be considered one holiday. However if the overlap is less than four days, that portion of Pesach which does not overlap the April School vacation shall be divided equally between the parties with the parent who does not have April School vacation having the ending days of Pesach.

d. The parties shall swap schedules in odd years.

e. When a vacation or holiday supercedes the regular parenting plan, the plan shall resume such that the parent who had the children for a holiday shall count the holiday as their weekend and the other parent shall have the next weekend as their regular weekend. By way of example, if Mother's Day weekend falls on Father's weekend, the children shall be with Mother on Mother's Day

Weekend and with Father the following weekend which would otherwise have been Mother's weekend.

15.        The parties agree that even if the children attend public school, they shall observe the high holidays and miss school.

16.    In addition to the school vacation weeks referenced above, each of the parties shall be entitled to have the children for a two (2) consecutive week vacation period during the summer. Parties shall exchange summer vacation request schedules no later than March 15th each year. If the children attend day or overnight camp, have lessons or schools, the parties shall choose vacation time which would not interfere with the children's other activities. The parties agree that neither parent shall enroll any child in day or overnight camp or summer school without the agreement of the other party, such agreement shall not be unreasonably withheld, however, due consideration must be given in all instances to the cost of such camps and activities.

### CHILDREN'S PASSPORTS.

17.    The children's passports, both USA and Israeli, shall be held equally by the parties. Wife shall hold Natiya's, Nihera's and Naveh's passports. Husband shall hold Nadiv's, Nuchal's and Asael's passports. Yashar does not have a passport at this time, but when he obtains one, it shall be held by Wife). The parties are specifically restrained from applying for replacement or other passports for the children. Except however, if either party is traveling with a child or children outside the USA, pursuant to other provisions of this Agreement and a child's passport is lost or stolen, he or she may seek a replacement passport for the sole purpose of continuing his travel and return to the USA.. When a trip is planned, as soon as the parent doing the traveling books the tickets, the parent not doing the traveling shall turn over the passports for the children traveling with the other parent who is traveling. In this way there will be no last minute need to exchange passports. At the end of the trip, the passports shall be returned to the parent in charge of holding the particular child's passport. The failure of a party to timely release the passports to the traveling parent shall be deemed a material breach of

this agreement. And, in the event of such failure to provide the passports in a timely manner such that a planned and scheduled trip is either changed at a cost to the traveling parent or cancelled, the parent who failed to provide the passports shall be obligated to reimburse the traveling parent for any lost travel costs.

### TRAVEL WITH CHILDREN.

18. When a party travels with the children, he or she shall provide the other party with a detailed itinerary including: date of departure and return, air plane or other confirmation details and confirmation numbers, where s/he is going to be going, the days s/he will be there, contact and other telephone numbers for him/her, the children and the place s/he will be; and only if that party makes specific advance arrangements for the other party to speak at least once per day, except on the Sabbath, with the children. Each party shall insure that the other party has cell phone numbers and the number for the cell phones of any of the children who have a cell phone; and that all of these cell phones are taken on the trip, kept powered and kept on.

### HUSBAND AND WIFE'S TRAVEL WITH CHILDREN OUTSIDE U.S.A.

19. a. The Husband and Wife may travel with the children outside the USA, but only if, as and when, he/she enters into a new written agreement / memorandum signed by the other party containing all of the information stated in the next-prior paragraph (**Travel Agreement**.) At that point, escrow attorneys shall provide Husband/wife with the children's passports together with a Notarized statement that Husband/wife is permitted to remove the children from the USA to the agreed-upon destination upon the terms set forth in what will then be the attached Travel Agreement.

b. After the parties have signed the Travel Agreement, or at such other time as the Court may order, escrow attorneys will then provide Husband/Wife the children's U.S.A. passports, for his/her use solely for the specified travel, together with a Notarized statement that Husband/Wife is permitted to remove the children from the U.S.A. to the agreed upon destination. The escrow attorneys

shall not withhold the passports from the Husband/Wife if he or she desire to travel outside of the United States with the children.

20.    a.    At no time for any reason, no matter what claimed emergency or other reason, may either party seek any order from the courts in Israel or elsewhere to prevent either party or the children from leaving Israel or any other place they have traveled to. If a party seeks such an order, he or she shall pay the other party's Expenses as defined below.

    b.    More specifically, each party waives all rights to initiate legal or other proceedings under Israeli law or the law of any other country except for the law of Massachusetts and then, only in the Norfolk Probate Court, Canton, MA, U.S.A. (or if the children have been moved by Wife from Norfolk County, MA, then in a subsequent U.S.A. court that has subject matter jurisdiction under the UCCJA, UCCJEA and PKPA), on their own behalf or on behalf of the minor child(ren) against the other party for issues arising out of and/or relating to the children and any other issue contained in this Agreement.

    c.    For purposes of this Agreement, expenses include the party's air and other travel, hotel, food and in-country travel including rental cars, cabs, legal fees and related costs in the U.S.A. and elsewhere, detective and other fees to search out and find the other party, certified copies and / or translation(s) of documents, and, generally, all other expenses reasonably perceived to be needed to effect a return of the children to Massachusetts or to whatever state in the U.S.A. Wife/husband and children may have been living in at the time they left on the trip or wherever Wife/husband resides at the time of the return.

### OTHER RELEVANT MATTERS.

21.    The birthdays of the parents and children will not change the parenting plan. Rather, the parent or child will celebrate their respective birthday during the next scheduled time with that parent.

22.    Presuming the parties both continue to reside in Massachusetts, the parties shall adjust their rotating schedule such that the children are always with Wife on Mother's Day Weekend and always with Husband on Father's Day Weekend.

23.    a.    At all times when the children are with either parent, they shall be permitted to telephone, e-mail, instant message or otherwise communicate with the other parent, free from restrictions by the parent who the child is with.

        b.    In order to facilitate the children's ability to speak with either party during the other party's parenting time, both parties shall maintain working land telephone lines. Neither parent shall make calls to a child earlier than 7 A.M. or later than 9 P.M. unless there is an emergency.

        c.    The parties recognize that the children are entitled to privacy during their conversations with the other parent and to that end will not eavesdrop, prevent a child from having a private conversation, etc.

        d.    When a child is called by a parent, the parent with whom the child is at that time shall make his or her best efforts to get the child to the telephone. If a child has, in fact, gone to bed, then there is no need to wake the child. However, the child shall be informed the next morning of the call from the parent and, as well, encouraged to call the other parent back.

24.    Telephone calls to the children by a parent shall be no more than two per day, unless there is a specific reason for a further call.

**COLLEGE EDUCATION.**

25.    The parties hope that their children will attend college. Accordingly, the parties shall discuss, investigate and agree on the appropriate college or university for the children when the time comes, taking into consideration each child's wishes.

26.    Because of the parties' present precarious financial situation, they are not able to make a commitment to help the children with undergraduate college expenses (College Expenses.)

27.    The term College Expenses includes, without limitation, preparatory courses for the SAT or other entrance examinations, application fees, travel to see various colleges, tuition, room, board (on or off campus, plus telephone and utilities), books, lab, necessary equipment and other associated fees, plus a reasonable number of trips to and from college each year to the extent they are financially able at the time the children go to college.

28.    The children shall each first apply for financial aid, scholarships and student loans, which, if received, shall be used as the first source of payment for College Expenses.

29.    In the future, if the parties are not able to agree on which of them, if either, shall have to pay for all or a part of a child(ren)'s College Expenses, either party shall file an action in a court of competent jurisdiction. At that time they shall be obligated to jointly move - and do hereby authorize the other to assent to a motion for a speedy trial. At that time the court shall consider the parties' respective then-present obligations, income, assets and expenses.

### CHILD SUPPORT.

30.    a.    Husband shall pay to the Wife the sum of $3,010 per month on the first of July 2006, in advance, and the first of each subsequent month for support of their children, through the Department of Revenue until further order of the court. Between the date of this agreement and commencement of the monthly payments, Husband shall continue to make payments in accordance with the probate court's temporary order, albeit the weekly amount shall be increased to $700.

       b.    If in the future, Husband is paying both alimony and child support he shall pay both amounts in full at the same time and in the same manner.

Antelman Agreement
No. 04D-0759-DV1                    Page 33                    _____ Husband
                                                             _____ Wife

31.    Annually, no later than May 15th, commencing on or before May 15, 2006, Husband shall provide Wife with copies of all income tax returns together with all forms W-2, 1099, and K-1 which were filed by him for the prior calendar year and the Wife shall provide copies of all income tax returns which she filed for the prior calendar year including all forms W-2, 1099 and K-1.

33.    a.    The Husband and Wife shall equally pay for various fees for extra curricular activities (such as sports, lessons) in which the children may wish to participate.

b.    Before a child is enrolled in any such activity, the parties shall communicate with each other in an attempt to agree on which activities the children will participate, taking into consideration the schedules of the other children and availability of the parents to get the children to and from the activities, as well as the cost of the activity.  Neither parent shall enroll a child in an activity for which they expect partial of full reimbursement of fees without the express agreement of the other parent.

c.    Agreement of a party to the children's participation in activities shall not be unreasonably withheld.  If a child is enrolled in an activity, the parent with whom that child may be on that day shall use his or her best efforts to get the child to the activity, particularly if it is a team sport in which team mates may be "counting" on the child to be present and participate.

(End of Exhibit D)

# EXHIBIT  E – LIABILITIES

The parties have a number of debts.

The bulk of the debt in Wife's name has been charged off by the creditors. To the extent said debts have been charged off, Wife will not pay those debts. Currently there are 7 debts in Wife's name which are in collections:

1. BankOne credit card in the amount of $5,635.52;
2. Telecom USA utilities in the amount of $257;
3. Telecom USA utilities in the amount of $380.42;
4. Rossi Law Offices in the amount of $450.00 for old dental bills;
5. Harris & Dial in the amount of $4,991.43 for old credit card debt;
6. Associated Recovery Systems in the amount of $829.70 for old credit card debt; and
7. Unifund C C R Partners in the amount of $948.39 for a judgment on an old unpaid invoice.

Wife shall be responsible for the above seven debts which she shall pay. Or, Wife may elect to file for bankruptcy.

Husband shall be obligated to pay all debts standing in his name, landlords in Israel, friends, relatives or anyone else Husband believes money is owed to. Husband will forever indemnify and hold Wife harmless for all debts in his name landlords in Israel, friends, relatives and anyone else whom Husband may owe money.

(End of Exhibit E)

# EXHIBIT F - LEGAL FEES AND COSTS

### FEES IN CONNECTION WITH THE DIVORCE.

1.    Each shall be responsible for the payment of his or her own legal fees and costs in connection with this divorce.

### FEES IN THE EVENT OF A BREACH.

2.    In the event that a court finds a party responsible for a breach of any term of this Agreement, the party claiming a breach may also seek an order from that court to have his or her reasonable attorney's fees and costs paid by the breaching party.

3.    A breach is defined as a party violating a term of the agreement or attempting to change, set aside or avoid the clear meaning of any part thereof. However, this is not meant to exclude a Rule 60(b) motion if properly presented.

4.    If, after breaching the Agreement, the breaching party fulfills his or her obligations, the breaching party shall still be responsible for paying the non-breaching party's legal fees and expenses. And, if need be, filing a complaint for contempt or going forward to collect such fees shall be deemed proper.

(End of Exhibit F)

Antelman Agreement
No. 04D-0759-DV1                       Page 36                 _____ Husband
                                                                _____ Wife

## EXHIBIT G

## TAX CONSIDERATIONS AND CONSEQUENCES

### TAX CONSEQUENCES OF TRANSFERS OF PROPERTY.

1.    a.    Sections 1041 (a) and (b) of the U.S. Internal Revenue Code of 1986, as amended, are applicable to all transfers of property required by this Agreement so that no gain or loss will be recognized by either party upon their relinquishment of said property; and the transferee will have a carryover basis in each transferred asset, receiving the transferor's interest and adjusted cost basis.

   b.    Each shall provide the other with any requested information necessary for complete and accurate tax reporting about the adjusted basis of said property.

2.    To the extent that the stated "income tax" treatment of a transfer is not accepted by the IRS and if a party has to pay the IRS or Mass DOR additional income taxes, interest and penalties as a result thereof, he or she shall be reimbursed by the other party.

### INCOME TAXES.

3.    a.    Each party shall hold the other harmless and indemnified from any claim, deficiency, demand, penalty or interest and associated legal and accounting fees in connection with their joint income tax returns to the extent such is attributable to his or her failure to report income or to excess deductions.

   b.    In the event either party receives any notice, demand or other communication from the IRS, Massachusetts DOR or U.S. Attorney regarding their joint income tax returns, he or she shall promptly provide a copy to the other.

4.    Wife shall file an individual income tax return for 2005 to report the capital gain on the sale of the former marital home.   It is expected that Wife will owe no

Antelman Agreement
No. 04D-0759-DV1                    Page 37                    _____ Husband
                                                              _____ Wife

tax as a result of filing this return. However, if for some reason, Wife owes a tax, the parties shall split said obligation equally. Husband is preparing individual income tax returns for 2003, 2004 and 2005. Husband shall claim all of the parties children as dependents during those years. Husband shall be solely responsible for any tax, interest and penalties resulting from said filing.

### DEPENDENCY.

5.   Beginning in 2006, if Husband provides proof to Wife on or before April 1st of each year that he has filed U.S. Federal and State Income tax returns, then in that year, Husband shall have the right to claim all seven children as dependents on those tax returns. In the event Husband does not provide that proof in a timely fashion, then Wife shall have the right to claim all seven children as her dependents if Wife earns an income such that she is required to file a tax return.

6.   In the event Wife becomes employed to an extent that she would benefit from the use of child dependency exemptions, Wife shall have an accountant prepare an analysis on or before March 15th of each year to analyze how many dependents she will benefit from claiming. To the extent there is a tax benefit to Wife, she shall claim up to three of the children as dependents on her tax return and Husband shall claim the other three children. In the event both parties would benefit from claiming a fourth child as a dependent on their tax return, they shall rotate the fourth child exemption with Wife having the first option to use the exemption in odd years and Husband having the first option to use the fourth exemption in even years. In any odd year that Wife will not benefit from the use of the fourth exemption, Husband may take the fourth exemption. In any even year that Husband will not benefit from the use of the fourth exemption, Wife may take the fourth exemption.

7.   As the parties' children become emancipated the parties shall continue to share the exemptions as set forth in the next prior paragraph except that when there are only an even number of children, the parties shall equally split the number of exemptions to the extent they would each benefit from claiming them.

Antelman Agreement
No. 04D-0759-DV1                    Page 38                    _____ Husband
                                                              _____ Wife

In years that there is an odd number of child exemptions they shall continue to rotate the additional exemption.

8.    In the event, Husband is permitted to claim any or all of the children as his dependent, Wife shall sign the necessary forms giving Husband permission to claim those children as dependents on his tax returns, specifically, the Wife shall timely execute IRS form 8332.

(End of Exhibit G)

## EXHIBIT H - RELIGIOUS MATTERS TO BE ENFORCED AS A CIVIL CONTRACT and MIRROR IMAGE ORDER.

1.    The parties would like to raise their children as Orthodox Jews in the tradition which accepts children going to Lubavitch schools and/or Yeshivas, e.g. where boys and girls are usually not in the same classes. If however, the economics make this goal unattainable, it is understood that the children may attend schools where boys and girls learn in the same classroom.

2.    a.    In order that each party have assurances that, if the children are brought to Israel on visitation, that they will be returned to the U.S.A., the parties shall:

> (1)    Sign a separate agreement containing the custody and visitation provisions of this agreement; and

> (2)    Have the separate agreement translated into Hebrew.

b.    The separate agreement shall be executed in a form acceptable to the civil courts in Israel.

c.    The parties shall jointly petition the Israeli civil court (Bet Mishpat Li'inyanei Mishpacha) to enter the Hebrew language Agreement as a court order enforceable by the Israeli court. The Israeli court order shall be a mirror image of the order of the parties' Agreement and the Massachusetts court judgment regarding custody and visitation, including, without limitation, provision regarding their pledge to not seek an order preventing a party or the children from leaving Israel.

d.    By entering into the mirror image order in Israel, the parties do not, thereby, subject themselves to personal jurisdiction in Israel, except to the extent necessary to obtain emergency enforcement of the mirror image Agreement and mirror image judgment.

Antelman Agreement
No. 04D-0759-DV1                    Page 40                    _____ Husband
                                                              _____ Wife

e.    The parties shall equally pay the costs of a translation service and associated Israeli court fees and for each party's respective Israeli lawyers.

f.    Notwithstanding any other provision of this Agreement, until such time as the mirror image order is entered by the Bet Mishpat Li'inyanei Mishpacha, the Husband shall not be permitted to remove the children from the USA to any other country; and, if he does so, he shall be adjudged as having kidnaped the children in violation of Massachusetts and USA criminal law.

g.    Notwithstanding the entry of the mirror image order, the parties agree that neither of them shall request any court in Israel to modify any provision of custody, visitation, support or alimony.    So long as the Wife and the child(ren) live in Massachusetts, it is Massachusetts that shall have exclusive jurisdiction over and exclusive rights to modify custody, visitation, support or alimony.

(End of Exhibit H)

## EXHIBIT I - RHODE ISLAND CRIMINAL COMPLAINT.

1.    Husband shall promptly take whatever steps are necessary to have the current criminal charges pending against Wife in the state of Rhode Island dismissed or dropped. Husband shall provide Wife with proof that said charges are not being pursued.

2.    In the event, upon Husband's request, the police or district attorney or other prosecuting body in Rhode Island refuses to dismiss or drop the charges Husband asked them to bring as a result of an alleged altercation between the parties in August, 2004, Husband shall not cooperate in any prosecution of Wife for same and if called to do so, shall refrain from testifying against Wife.

(End of Exhibit I)

## EXHIBIT J - OTHER PENDING LITIGATION.

1.    Once the court has approved this agreement, the parties shall sign and file stipulations to dismiss the following additional pending litigation:

a.    Husband's Complaint for Contempt pending in the Norfolk Probate Court, docket number 04D-0759, currently scheduled for trial on August 28, 2006; and

b.    Husband's Petition for Return of Children to Israel pending in the U.S. District Court for the District of Massachusetts, docket number 1:05-cv-11786-WGY.

(End of Exhibit J)
(End of Exhibits and end of Agreement)

## COMMONWEALTH OF MASSACHUSETTS

Norfolk County                                           JUNE 22, 2006

Then, personally appeared    **BARBARA KAUSIIS, A/K/A ANTELMAN** and proved to me through satisfactory evidence of identification which was mDc 582546 170 _____, to be the person whose name is signed on the preceding and/or attached document and acknowledged to me that she signed it voluntarily for its stated purpose,

Before me,



_____, Notary Public
My commission expires:
3|18|13

OFFICIAL SEAL
JANICE M. KLUGE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Mar. 8, 2013

## COMMONWEALTH OF MASSACHUSETTS

Norfolk County                                           JUNE__, 2006

Then, personally appeared    **PERRY ANTELMAN** and proved to me through satisfactory evidence of identification which was _____, to be the person whose name is signed on the preceding and/or attached document and acknowledged to me that he signed it voluntarily for its stated purpose,

Before me,

_____
_____, Notary Public
My commission expires: _____

Antelman Agreement
No. 04D-0759-DV1                     Page 10                     ____Husband
                                                                 BK Wife




c.    In the event a third party makes or commences any claim against an indemnified party, the indemnified party shall promptly give notice of the claim to the indemnifying party; and the indemnifying party shall have the opportunity, in good faith and at his or her own expense, to defend any such claim.

**COUNTERPARTS.**

23.    This Agreement is executed in counterparts, each of which is deemed to be an original.

**SIGNED AS A SEALED INSTRUMENT** this _21_ th day of JUNE, 2006

_Barbara Kausits_
Barbara Kausits, a/k/a Antelman                    Perry Antelman